[Crim. No. 1293. Second Appellate District, Division One.—November 3, 1925.]

## THE PEOPLE, Respondent, v. GEORGE E. FRANK, Appellant.

[1] CRIMINAL LAW—IMPROPER CROSS-EXAMINATION OF DEFENDANT—USE OF FALSE NAME.—In this prosecution for robbery and burglary, it was error for the trial court, over defendant's objection that it was not proper cross-examination, to permit the prosecution to question defendant as to the name given by him to the officers when he was first arrested, where defendant, on direct examination, did not give any testimony relative to the name given by him at the time of his arrest or any other testimony that would justify the asking of such question on cross-examination.

[2] ID.—DEFENDANT IS WITNESS—CROSS-EXAMINATION PERMISSIBLE.—A person accused of crime cannot be compelled to testify against himself; and where he takes the witness-stand and testifies in his own behalf, he can be cross-examined as to such matters to which he testified upon direct examination, but upon no other matter.

[3] ID.—USE OF FALSE NAME—CONSCIOUSNESS OF GUILT—CROSS-EXAMINATION WITHOUT PREJUDICE.—In such prosecution, testimony by the arresting officer as to the false name used by defendant at the time of his arrest was admissible, in connection with and as a part of the evidence of his attempted flight after he, with a stolen pin in his possession, found himself in the presence of the officers of the law, as a circumstance tending to show consciousness of guilt; and where said officer had already been called as a witness for the prosecution, and had testified as to the false name given by defendant shortly after his arrest, defendant was not injuriously affected by the error of the trial court in permitting the cross-examination of defendant as to the use of such false name.

[4] ID.—MISCONDUCT OF DISTRICT ATTORNEY—REFERENCE TO ACCUSED AS POTENTIAL MURDERER—EVIDENCE.—In such prosecution, in view of the evidence as to the acts and threats of defendant and his use of a gun at the time he committed the robbery, the district attorney was justified, in his closing argument to

---

1.  See 27 Cal. Jur. 133.
2.  See 27 Cal. Jur. 94; 28 R. C. L. 445.
3.  See 8 Cal. Jur. 43.
4.  See 8 Cal. Jur. 266.

the jury, in referring to defendant as "this innocent young man—this potential murderer."

[5] ID.—REFERENCE TO ANOTHER CASE—INSTRUCTIONS TO JURY—ABSENCE OF PREJUDICE.—In such prosecution, the defendant was not prejudiced by any improper reference by the district attorney, in his closing argument to the jury, to another person accused of murder and whose case was then pending, and to the defenses of insanity and alibi therein, where the trial court promptly sustained defendant's objection to said reference and instructed the jury to disregard the same.

[6] ID.—CHARGING JURY WITH RESPONSIBILITY FOR CASE.—In such prosecution, the statement of the district attorney, in his closing argument to the jury, that if they suffered defendant to escape they would make themselves responsible, was just another way of stating to the jury that the final determination of the case rested with them and that they would be responsible for such final determination; and the making of such statement did not constitute misconduct.

[7] ID.—RETRIAL OF CASE—PLEA OF ONCE IN JEOPARDY—ABSENCE OF EVIDENCE—SPECIAL VERDICT NOT ESSENTIAL.—On the second retrial of a criminal case, after reversal on appeal of a judgment of conviction, the failure of the jury to find upon defendant's special plea of once in jeopardy by virtue of the first trial did not constitute prejudicial or reversible error, where such special defense was apparently overlooked both by the court and by counsel on said second retrial and no evidence in support thereof was introduced by defendant.

[8] ID.—NEW TRIAL—SPECIAL PLEAS BASED UPON FORMER VERDICT.—Under section 1180 of the Penal Code, the defendant in a criminal case has no right even to interpose the pleas of former acquittal or once in jeopardy by virtue of the verdict rendered at a former trial of said action, where the judgment predicated upon said verdict has been reversed on appeal and a new trial ordered.

---

(1) 40 Cyc., p. 2510, n. 29.    (2) 16 C. J., p. 566, n. 76; 40 Cyc., p. 2501, n. 94.    (3) 16 C. J., p. 550, n. 92, p. 551, n. 11, p. 553, n. 65, 74, p. 554, n. 75; 17 C. J., p. 314, n. 69, p. 315, n. 74 New. (4) 16 C. J., p. 896, n. 85, p. 910, n. 64.    (5) 16 C. J., p. 917, n. 67. (6) 16 C. J., p. 909, n. 59 New.    (7) 16 C. J., p. 286, n. 73; 17 C. J., p. 356, n. 13.    (8) 16 C. J., p. 262, n. 18; 17 C. J., p. 356, n. 13.

6.  See 8 Cal. Jur. 272.
8.  See 7 Cal. Jur. 946; 8 R. C. L. 160.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Elliot Craig, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank W. Allender for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

CURTIS, J.—The appellant was found guilty of the crimes of robbery and burglary and appeals from the judgment and the order denying his motion for a new trial. This same action was before the supreme court (193 Cal. 474 [225 Pac. 448]) and later before this court. (71 Cal. App. 575 [236 Pac. 189].) **[1]** The first contention of appellant for reversal of the judgment is that the court erred in asking appellant on cross-examination the following question: "What name, if any, did you give to officers Rich and Murphy when you were first arrested?" This question appellant answered: "Williamson." From what had transpired during the trial just preceding the asking of this question, it is clear that its purpose was to show that appellant had given a false name when arrested. The question was objected to upon the ground that it was not proper cross-examination. This objection was overruled. Appellant had not in his direct examination given any testimony relative to the name used by him at the time of his arrest or any other testimony that would jusify the asking of this question on cross-examination. To ask it under such circumstances was error. (*People* v. *Mohr*, 157 Cal. 732, 736 [109 Pac. 476].) **[2]** There is no rule better understood in our criminal procedure than that a person accused of crime cannot be compelled to testify against himself. After taking the witness-stand and testifying in his own behalf, he can be cross-examined as to such matters to which he testified upon direct examination, but upon no other matter. This rule limiting the cross-examination of a defendant while a witness, to such matters testified to upon his direct examination, is a general rule applicable to all witnesses. But it has been held in some cases that the rule thus limiting cross-ex-

amination is much narrower when applied to the defendant as a witness than when applied to ordinary witnesses. (*People* v. *O'Brien,* 96 Cal. 171 [31 Pac. 45]; *People* v. *Crowley,* 100 Cal. 478 [35 Pac. 84].) The latter of these two cases quotes with approval the following language found in the former case: "And in *People* v. *O'Brien,* 96 Cal. 171 [31 Pac. 45], the court say that 'so far as the defendant is concerned, the court is not allowed that discretion as to the extent of the scope of the cross-examination which it is permitted to exercise in the examination of the other witnesses.' " The court also in this same case says: "We have been referred to no case decided since the present condition of the statutory law (sec. 1323, Penal Code) on the subject, which holds that the cross-examination of a defendant may be as wide as that of any other witness."

[3] While the court erred in overruling appellant's objection to this question, we are of the opinion that the appellant was not injuriously affected thereby. The officer Murphy, to whom he testified he gave the false name, had already been called as a witness for the prosecution, and had testified that appellant had given the name of Williamson to him shortly after his arrest. This evidence therefore being already before the jury, the appellant was not seriously injured by being compelled to testify to what had already been given in evidence by the officer. Nor was it error in our opinion to permit the officer Murphy to testify to this fact. The evidence showed that just prior to appellant's arrest he was in the office of a diamond broker attempting to sell the diamond pin which he was charged with stealing. This office was on the ninth floor of the building. While there two officers entered the room and announced in the hearing of appellant that they were from the city detective bureau. Whereupon appellant hurried from the room out into the hall and then down eight flights of stairs closely pursued by the officers, who followed him through the lobby of a hotel situated on the ground floor and then out on to the sidewalk and across the street, where he was arrested by them, after he had assaulted them and attempted to avoid arrest by the use of force and violence. Upon his arrest, he was immediately taken to the police station and there gave his name to the officers in charge as Williamson. Under these circumstances there was no error

in admitting the evidence complained of, as his statement giving a false name was made after the offense had been committed and evidently with knowledge on appellant's part of its commission. It must be considered in connection with and as a part of his attempted flight after he, with a stolen pin in his possession, found himself in the presence of the officers of the law. As was said in *People* v. *Cox*, 29 Cal. App. 419, 422 [155 Pac. 1010, 1011], "when a person suspected of and charged with crime resorts to deception and falsehood, that is a circumstance which, like flight and concealment, tends to show a consciousness of guilt, . . . arising from other established facts." No complaint is made as to the evidence that appellant, when the officers appeared in the broker's office, fled from them down numerous flights of stairs and out upon the street, and that upon an attempt being made to arrest him, he resisted arrest and committed an assault on the arresting officers. This evidence is conceded to be competent and material, as it showed an attempt to elude the officers by flight. His statement giving a false name to the officers at the police station only a short time thereafter was made undoubtedly for the purpose of deceiving them as to his true identity and with the evident intent and purpose of accomplishing by deception that which he had failed to attain through flight. All of this evidence was of the same general character and was properly admissible against appellant. There is nothing inconsistent with these views to be found in the former opinions rendered in this action by this court. At the trial of the action resulting in the judgment reviewed by this court and reported in 71 Cal. App. 575 [236 Pac. 189], the evidence of the assumed name of the appellant was all given on cross-examination and for this reason it was held to be incompetent. On page 189, the court said: "On no one of the occasions when a witness was thus interrogated with respect to the use by defendant of an assumed name was the questioning done under proper cross-examination."

The further contention is made that the district attorney was guilty of misconduct, prejudicial to the rights of appellant, in his closing argument to the jury, and that his conduct was such that it prevented appellant from having a fair trial. Appellant specifies three instances in which he claims that the district attorney was guilty of miscon-

duct. First—In his reference to the appellant as "this in-
nocent young man—this potential murderer." Second—In
his reference to Dr. Young, accused of murder and whose
case was then pending in said court. And, lastly, in his
statement to the jury that if they suffered appellant to
escape, they would make themselves responsible. In each
instance, after the remark claimed to be improper had been
made by the district attorney, the appellant made his ob-
jection thereto and specified the same as misconduct on
the part of the prosecuting officer. The court in each in-
stance sustained appellant's objection and instructed the
jury to disregard the same. [4] As to the remark of the
district attorney that the defendant was a potential mur-
derer, we are not prepared to say that the use of these
words on the part of the district attorney was not justified
by the evidence before the jury. This evidence tended to
show that the appellant had entered the room of Mr. and
Mrs. McPherson during their absence, and after their return
he pointed his gun at Mr. McPherson and threatened to
kill him. According to the testimony of Mr. McPherson
"he had his gun stuck right in my face or stomach, and
he finally grabbed the pin, pulled it out of my necktie;
demanded what money I had in my pocket with his gun
stuck at me and turned around and rushed toward the
door." He had previously pointed his gun toward Mrs.
McPherson and said, "Drop that telephone." A person
guilty of such conduct has no reasonable ground to com-
plain if he is classified as a "potential murderer." [5]
The reference of the district attorney in his argument to
the jury to the case of Dr. Young was to the effect that he
(the district attorney) expected to try the case of Dr.
Young in the next three or four weeks, and that he pre-
dicted that there would be a plea of insanity in that case,
because of the conclusive character of the case against Dr.
Young. He further stated that the other defense which
is familiar to prosecutors was that of an alibi. It is ap-
parent that the case of Dr. Young and the character of
the defense he might interpose to the charge against him
had absolutely no connection with the case then pending
against appellant. The reference thereto by the district
attorney may accordingly have been improper. But we
are unable to see that the appellant was materially or at

all prejudiced by this reference to the case of Dr. Young, even though the defense interposed by appellant was that of alibi. · The court promptly sustained appellant's objection to said reference and instructed the jury to disregard the same. **[6]** As to the third and final remark of the district attorney of which appellant complains, we see no objection to it. The prosecutor told the jury if they suffered the appellant to escape, they would make themselves responsible. It was just another way of stating to the jury that the final determination of the case rested with them, and that they would be responsible for such final determination. The jury would be responsible if they acquitted the appellant, but in no less or greater degree than if they convicted him. This responsibility the law directly places upon the jury and upon them alone, and we can conceive of no impropriety on the part of counsel either for appellant or for respondent in reminding the jury that they have this important responsibility resting upon them.

**[7]** The third and final ground in support of his appeal is that the jury failed to find upon his plea of once in jeopardy. Upon the first trial of this action, the appellant was convicted, but on appeal the judgment was reversed. Appellant thereafter and before the second trial entered his plea of once in jeopardy by virtue of the first trial. On the second trial, the jury found him guilty as charged in the information, and rendered a verdict against his plea of once in jeopardy. From a judgment based upon this verdict, he again appealed and this second judgment was reversed. On the third trial, the one now under review, no evidence was introduced by appellant upon his plea of once in jeopardy and the same was not passed 'upon by the jury. The fact that appellant had interposed such a plea had apparently been overlooked both by the court and by counsel.

It has repeatedly been held in this state that ''where a defendant accused of crime has interposed a plea of not guilty, and also a separate plea of 'once in jeopardy' for the same offense, he is entitled to have the latter plea passed upon by the jury before judgment can properly be pronounced against him, and, where the jury found a verdict

of guilty without passing upon the plea of 'once in jeopardy,' a judgment of conviction will be reversed, and a new trial granted." (*People* v. *Tucker,* 115 Cal. 337 [47 Pac. 111]; *Ex Parte King,* 10 Cal. App. 282 [101 Pac. 810]; *People* v. *Kinsey,* 51 Cal. 278; *People* v. *Helbing,* 59 Cal. 567; *People* v. *Fuqua,* 61 Cal. 377; *People* v. *Hamberg,* 84 Cal. 468 [24 Pac. 298]; *People* v. *Eppinger,* 109 Cal. 294 [41 Pac. 1037].)

It has been so held even where no evidence was introduced or offered in support of the plea. (*People* v. *Tucker, supra.*) Since the above cases were decided, there have been some decisions of the supreme and appellate courts of this state which, while not directly overruling these cases, or for that matter even referring to them, appear to enunciate a somewhat different rule. In *People* v. *Strickler,* 167 Cal. 627 [140 Pac. 270], it was held that where a defendant pleaded not guilty and also former acquittal and once in jeopardy, and thereafter withdrew his plea of not guilty and pleaded guilty to the charge, but no action was taken by him or by the court as to his other pleas, he thereby waived his pleas of former acquittal and once in jeopardy. In the very recent case of *People* v. *Newell,* 192 Cal. 659 [221 Pac. 622, 625], the court, on page 667 said, "It is just as necessary to support special pleas by proof (*People* v. *Cummings,* 123 Cal. 269, 272 [55 Pac. 898] as it is to interpose the pleas, and the failure to do either is to be deemed a waiver of the defense (*People* v. *Strickler,* 167 Cal. 627 [140 Pac. 270]; *People* v. *McFarlane, supra* [138 Cal. 481, 61 L. R. A. 245, 71 Pac. 568, 72 Pac. 48]). It was said in *People* v. *Stoll,* 143 Cal. 689, 696 (77 Pac. 818, 821): 'The right to interpose a plea of once in jeopardy is a personal privilege, of which a defendant may, or may not, avail himself.' " In *People* v. *Brannon,* 70 Cal. App. 225 [233 Pac. 88], the defendant was tried and convicted of first degree murder. He was charged in two counts of the indictment. First, with the crime of an assault with a deadly weapon upon his wife, and in the second count with murder of one Margaret Cronin. He plead not guilty to both charges, and moved for a separate trial upon each count of the indictment, and the same was granted by the court. He was first tried

for the assault upon his wife and acquitted. He thereupon moved the court to permit him to interpose the pleas of former acquittal and once in jeopardy. The evidence tended to show that he had fired his pistol at his wife, but that the bullet therefrom had missed his wife and struck and killed Margaret Cronin. The court refused to permit him to interpose either of the special pleas. The appellate court held that the acquittal of said defendant of assault with a deadly weapon upon his wife was not a bar to his prosecution upon the charge of murder of Margaret Cronin, and, therefore, to use the words of the court, "that the appellant suffered no prejudice by reason of the court's refusal to permit him to plead former acquittal and once in jeopardy." From these later decisions, we question whether the strict rule invoked in the earlier cases above referred to can now be considered the law in this state. On the other hand, we think that it can be reasonably inferred from these later decisions that the appellant may and does waive his pleas of former acquittal and once in jeopardy by his failure to produce any evidence in support thereof, and, furthermore, that the failure of the jury to render a verdict upon said pleas in the absence of any evidence to support them does not result in any prejudice to appellant. As we understand the decision in *People* v. *Brannon,* the court held that evidence of the acquittal of the defendant of the charge of an assault with a deadly weapon upon the wife of the appellant would not support a plea of once in jeopardy or former acquittal in a prosecution against him for the murder of Margaret Cronin, even though the two charges grew out of the same act on the part of the defendant. Accordingly, the court held that the appellant was not prejudiced by the refusal of the court to permit him to interpose the special pleas of former acquittal and once in jeopardy. If, therefore, the accused is not prejudiced by the refusal of the court to permit him to interpose such pleas when there was no evidence to support them, or either of them, how can he be prejudiced by the failure of the jury to find upon such pleas when he has introduced no evidence to support either of them? It may be conceded that the proper procedure would have been in the action now before us to submit these

pleas to the jury and require of them a verdict upon each of them. But as there was no evidence offered by appellant to support either of said pleas, it would have been the duty of the court to advise the jury to find for the people and against the defendant upon each of such pleas. We think it reasonable to assume that the jury under such circumstances would follow the advice given them by the court, and find against the defendant. Had this been done in the present action, the appellant would have been in no better, nor worse, condition than that in which he now finds himself. He therefore suffered no prejudice by reason of the failure of the jury to render a verdict upon the special pleas interposed by him.

[8] There is another provision of law which we consider applicable to this case. Section 1180 of the Penal Code is as follows: "The granting of a new trial places the parties in the same position as if no trial had been had. All the testimony must be produced anew, and the former verdict cannot be used or referred to, either in evidence or in argument, or be pleaded in bar of any conviction which might have been had under the indictment." By the provision of this section, the appellant was prohibited from pleading in bar the judgment rendered upon his former trial which was reversed on the appeal taken by him. It is true that the constitutionality of this section has been questioned, but in so far only as the latter part of said section may apply to an offense of which the defendant has been acquitted by virtue of conviction of another of less degree included in the information. (*People* v. *Gordon,* 99 Cal. 227, 232 [33 Pac. 901].) In all other respects, the section is legal and free from constitutional objections. As appellant under this section had no right even to interpose the pleas of former acquittal or once in jeopardy by virtue of the verdict rendered at the first trial of said action, he cannot be held to have been prejudiced or deprived of any right whatever by the failure of the jury to render a verdict upon pleas that were illegal and were made without any legal authority.

The judgment and order denying motion for a new trial are affirmed.

Conrey, P. J., and Hahn, J., *pro tem.*, concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 31, 1925.