[Crim. No. 6035.  Second Dist., Div. One.  June 13, 1958.]

THE PEOPLE, Appellant, v. WILLIAM HAYWOOD, Respondent.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, William B. McKesson, District Attorney (Los Angeles), Jere J. Sullivan, Lewis Watnick and Robert Lederman, Deputy District Attorneys, for Appellant.

No appearance for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County, the above named defendants█ were charged with the crime of burglary (Pen. Code, § 459).

Defendant Haywood entered his plea of not guilty, which plea was later withdrawn, and a motion was made under Penal Code, section 995, to set aside the information on the ground that defendant had been committed without reasonable or probable cause. The motion was granted and defendant Haywood ordered discharged from custody. From such order the People prosecute this appeal.

Concerning the background of this prosecution, the record reflects that the following is a fair epitome of the evidence presented to the committing magistrate. Ejner Jensen is an assistant superintendent of installations for the Department of Water and Power, City of Los Angeles, and had seen People's Exhibit 1 for identification, which was an assortment of copper and other materials. The last time he had seen these materials was the latter part of February or the first part of March, 1957, at the department's patrol station on the corner of Century and Clovis Avenue within the boundaries of Station B in Los Angeles. The materials were inside of a stucco building with four walls and a roof and metal doors and windows. These materials (People's Exhibit 1) were the property of the department of water and power and are peculiar in that the department of water and power is the only utility in the country to use those fittings.

No one was given any permission or consent to remove the articles in People's Exhibit 1 for identification from the premises in question. The department of water and power manufactures the pieces in its own shops.

R. B. McCaulou is a chief electrical plant operator for the bureau of power and light and supervises the premises located at Century and Clovis Avenue. He recognized items, like those in People's Exhibit 1 for identification, and has items such as these stored in the building at Century and Clovis Avenue, which is in the county of Los Angeles. He gave no one consent or permission to remove these items from that building.

Edwin J. Sanders is one of the arresting police officers in this case. On April 30, 1957, at approximately 11 p. m., he was standing on the west side of Clovis Avenue and

observed a 1948 maroon, four-door Chevrolet automobile standing in front of the water and power building and observed a person sitting in the driver's seat of this vehicle. This person was later identified as defendant Scott. The witness pointed out the defendant Scott for the record.

At approximately the same time he observed "Mr. Thompson, who was identified to us as Thompson" running from the yard of the water and power building to the car. Mr. Thompson and defendant Haywood were found to be one and the same person; the name Thompson being used by the defendant Haywood. The witness pointed out the defendant Haywood for the record. The witness observed the defendant Haywood running from the yard of the department of water and power toward the car and "jump" into it. The witness ran over to the car and observed the defendant Scott and Haywood attempting to drive away. The witness observed People's Exhibit 2, a large crowbar, approximately 10 or 15 minutes later on the right side of the gate from which you enter the water and power grounds.

Officer Sanders saw People's Exhibit 1 for identification immediately after he placed defendants under arrest. When he and his partner looked into the sacks which were in the defendant's possession in the car and observed "these fittings and wire cable and brass," it was approximately 11:15 p. m. Among other things in the car where the defendants were, there was a small pry bar and a screwdriver in the front seat. There were also cloth gunny sacks which contained items similar to People's Exhibit 1 for identification. The witness went over and looked at the water and power building and observed a window open to the rear of the back building. The window was dusty "and there were fresh claw marks on the outside of the window."

When the witness first saw defendant Haywood he was approximately 5 to 7 feet west of the fence on the outside going toward the automobile.

P. N. Bagoye is one of the investigating police officers in this case and in the course of his investigation had a conversation with defendant Haywood. Haywood was asked about the articles shown in evidence and was asked if he had obtained these in the department of water and power and he stated that he did. He was asked how he went about obtaining them and he said he had met a fellow by the name of Otis in a café, around 9:30 or 10 o'clock on the night of the 30th and Otis told him to go over and pick them up and

he went over to the bureau of water and power where they were lying "alongside" of the yard, next to the fence and he put them in the car and was arrested by the officers. The officer also had a conversation with the defendant Scott which was identically the same as that had with the defendant Haywood.

The sole question presented on this appeal is whether there was reasonable and probable cause to warrant the committing magistrate in holding defendant Haywood to answer in the superior court.

In support of his motion under Penal Code, section 995, defendant Haywood first advanced the argument that the corpus delicti of the crime of burglary was not established. This contention is devoid of merit. There was evidence that the property in question belonged to the department of water and power. It was taken from a building occupied by them without the permission of any custodian thereof. Officer Sanders observed defendant Haywood "running in a slow trot" from the yard, "jump" into the automobile and sit on the rear seat where People's Exhibit 1 was found. A rear window of the building was open and there were fresh claw marks on the outside thereof. A large crowbar was observed on the right side of the gate through which entrance is had to the water and power department grounds. Found on the front seat of the automobile occupied by defendants was a small pry bar and a screwdriver. To say that these facts do not constitute the corpus delicti of the crime of burglary is to do violence to reason and challenge credulity.

On hearing of the motion in the court below defendant Haywood also contended that the property in the automobile was identified only as being similar to that stored in the building. To us, it is clear that the identification was adequately proved. That evidence of similarity is sufficient was the holding in several cases (*People* v. *Frahm*, 107 Cal. App. 253, 266 [290 P. 678] and cases therein cited).

While the unexplained possession of recently stolen property by the defendant standing alone is not sufficient to justify his conviction of burglary, however, the fact of possession of recently stolen property unexplained is a circumstance tending to show guilt when accompanied with suspicious circumstances. The record before us contains abundant evidence of "other inculpatory circumstances" connecting defendant Haywood with the offense charged against him. The evidence presented to the committing magistrate in the instant

case was equally as strong and convincing as that held sufficient to sustain a conviction of the crime of burglary in *People* v. *McClure,* 133 Cal.App.2d 631 [284 P.2d 887].

■ The magistrate at the preliminary examination was also authorized to take into consideration the attempted flight of defendant Haywood as well as his use of a fictitious name (Thompson), as indicating a consciousness of guilt (*People* v. *Santora,* 51 Cal.App.2d 707, 710 [125 P.2d 606]; *People* v. *Costa,* 137 Cal.App. 617, 619 [31 P.2d 248]; *People* v. *Liss,* 35 Cal.2d 570, 576 [219 P.2d 789]).

■ In *People* v. *Platt,* 124 Cal.App.2d 123, 130, 131 [268 P.2d 529], Mr. Justice Vallée, speaking for the court, summarizes the rules applicable to the sufficiency of the evidence to hold an accused to answer to the superior court as follows:

"The evidence necessary to justify an order holding a defendant to answer to the superior court is not subject to the same test as that before a trial jury in a criminal action, and reasonable or probable cause may be found for holding to answer although the evidence does not establish the defendant's guilt beyond a reasonable doubt. All that is required is a reasonable probability of the defendant's guilt. (*Davis* v. *Superior Court,* 78 Cal.App.2d 25, 27 [177 P.2d 314].) ■ 'Reasonable or probable cause,' required to uphold the commitment of a defendant (Pen. Code, § 995), exists if there is sufficient proof to make it reasonable to believe that the defendant is guilty of the offense charged. (Citing cases.)

■ "On a motion to set aside an information, the question of the guilt or innocence of the defendant is not before the court, nor does the issue concern the quantum of evidence necessary to sustain a judgment of conviction. The court is only to determine whether the magistrate, acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendant had participated. (Citing case.) ■ A court may not substitute its judgment as to the weight of the evidence for that of the magistrate. If there is some evidence to support the information, the courts will not inquire into its sufficiency. ■ Under section 995 of the Penal Code, the information will be set aside only where there is no evidence that a crime has been committed or there is no evidence to connect the defendant with a crime shown to have been committed. (Citing cases.)"

(See also *People* v. *Flanders*, 140 Cal.App.2d 765, 768 [296 P.2d 13].)

In passing upon a motion to set aside an information under section 995 of the Penal Code, it is the record of the magistrate that is decisive. It is his function to weigh the evidence, and resolve conflicts and determine the credibility of witnesses. These things the superior court cannot do in testing the sufficiency of the showing made before the magistrate on a motion such as the one now engaging our attention.

The order is reversed.

Fourt, J., and Lillie, J., concurred.